## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Thomas Crawford, | : | |
| Plaintiff | : | Civil Action No. 2:15-cv-2438 |
| -vs- | : | Judge Algenon Marbley |
| Columbus State Community College, et al., | : | Magistrate Judge Terrence Kemp |
| Defendants | : | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Now comes Plaintiff, pursuant to Fed. R. Civ. Pro. 56 and Local Rule 7.2 and

submits the following Memorandum in Opposition to Defendants' Motion to Dismiss.

Respectfully submitted,

/s/ Michael Garth Moore
Michael Garth Moore (0025047)
341 South High Street Suite 201
Columbus    43215
Telephone 888-318-0075
mike@mgmoorelaw.com

Trial Counsel for Plaintiff

# TABLE OF CONTENTS

I.     **FACTS**.................................................................................1

II.    **STANDARD OF REVIEW**.............................................................3

      *Erickson v. Pardus,* 550 U.S. 89, 93 (2007)...........................................3
      *League of United Latin American Citizens v. Bresden*, 500 F.3d 523,
      527 (6th Cir. 2007)........................................................................4
      *Klusty v. Taco Bell Corp.*, 909 F. Supp. 516, 529 (S.D. Ohio 1995)................3
      *Kline v. Ohio State Dental Board*, 699 F. Supp. 2d 966, 970 (S.D. Ohio 2010)
      (Marbley, J.).............................................................................4

III.   **ARGUMENT**...........................................................................4

      A.     FIRST AMENDMENT RETALIATION

      1. Dr. Crawford has standing to sue for retaliation resulting
      from the delivery of the petition because of his
      association with the students...........................................................4

      *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)..........................5
      *Thompson v. North American Stainless, LP,* 562 U.S. 170 (2011)....................6
      *Montone v. City of Jersey City*, 709 F.3d 181 (3rd. Cir. 2013)........................7
      *Benison v. Ross*, 983 F. Supp. 2d 891 (E.D. Mich. 2013),
      *aff'd* 765 F.3d 649 (6th Cir. 2014)....................................................8

      2. Dr. Crawford has standing to sue because the students were acting
      as his agents in submitting the petition to the Defendants.............................10

      3. Defendants read *Garcetti* too broadly, it does not apply on these
      facts.....................................................................................10

      *Garcetti v. Ceballos,* 547 U.S. 410 (2006)...........................................10
      *Lane v. Franks*, ___ U.S.___, 134 S.Ct. 2369 (2014)...............................11

      4. The two instances of expression each satisfy the "public concern"
      test for Rule 12(b)(6) purposes......................................................11

      *Connick . Myers*, 461 U.S. 138, 140 (1983).........................................13
      *Pickering v. Bd. Of Educ.*, 391 U.S. 563, 574 (1968)................................13
      *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 543 (6th Cir. 2012).........12
      *Taylor v. Keith*, 338 F.3d 639, 643 (6th Cir. 2003)...................................12

*Chappel v. Montgomery County Fire Protection Dist. No. 1,*
131 F.3d 564, 574-577(6th Cir. 1997)…………………………………………..13
*Perry v. McGuinnis*, 209 F.3d 597, 604 (6th Cir. 2000)………………………………13

5. There are sufficient facts in the record to support causation……………………………17

*Matulin v. Village of Lodi*, 862 F.2d 606, 613…………………………………...17
*Thaddeus X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999)………………………...17

B.        DEFENDANTS ARE NOT ENTITLED TO QUALIFIED
IMMUNITY ON THE FIRST AMENDMENT RETALIATION
CLAIM…………………………………………………………………………18

*Risbridger v Connelly*, 275 F.3d 565, 569 (6th Cir. 2002)…………………………18
*Gaspers v. Ohio Dept. of Youth Svcs.,* 648 F.3d 400, 416 (6th Cir. 2011)…………19
*Wenk v. O'Reilly*, 785 F.3d 585, 598 (6th Cir. 2015)……………………………..19

C.        THE INDIVIDUAL DEFENDANTS MUST ANSWER FOR AGE
DISCRIMINATION UNDER SECTION 1983………………………… 20

1. The Right To Remedy Age Discrimination under the Equal
Protection Clause…………………………………………………………………… 20

*Levin v. Madigan,* 692 F.3d 607 (7th Cir. 2012) *cert. granted,*
133 S.Ct. 1600 (U.S. 2013) *and cert. dismissed as improvidently granted,*
134 S.Ct. 2, (U.S. 2013)…………………………………………………………...20
*Reed v. Garden City Free School Dist.*, 987 F. Supp. 2d 260, 263
(E.D.N.Y. 2013)……………………………………………………………………22
*Edwards v. Borough of Dickson Cty.,* 994 F. Supp. 2d 616 623
(N.D. Pa. January 14, 2014)………………………………………………………..22

2. The Right was clearly established by August, 2014……………………………..22

*Levin v. Madigan,* 692 F.3d 607 (7th Cir. 2012) *cert. granted,*
133 S.Ct. 1600 (U.S. 2013) *and cert. dismissed as improvidently granted,*
134 S.Ct. 2, (U.S. 2013)…………………………………………………………...22
*Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000)…………………………23

## MEMORANDUM IN OPPOSITION

### I. FACTS

The Second Amended Complaint, Doc. 11, asserts that Plaintiff, Thomas Crawford,

PhD has been a long-time lecturer at Columbus State Community College [hereafter,

"CSCC"], and has a history of excellent teaching, kudos, and the creation of the

"Fundamentals of Engineering" program that was instituted in 2013. Defendants do not

contest these facts.

The operative events which Plaintiff asserts resulted in his denial of a full-time

position commenced with the following:

19. In the Spring Semester, 2013, Plaintiff had in one of his classes a student named Braydi McPherson-Hathaway. Plaintiff and Mr. Mc\Pherson-Hathaway were in Nestor Hall when the latter mentioned that he had prepared a letter addressing student concerns about indifference to cheating in some physics classes, poor teaching, and other concerns. Mr. McPherson-Hathaway had a document in his hands, which is entitled "Recommendations." He told Plaintiff he was collecting student signatures to present it to Defendant Harrison. He also informed Plaintiff that in the document, he was recommending that Plaintiff be promoted to a full-time position because of Plaintiff's superior teaching and tutoring. Around the same time, Plaintiff was informed by another student of concerns of cheating in the physics classes. At that point, Plaintiff did not dissuade the students from bringing the concerns to the attention of CSCC administration. He himself had serious concerns about the quality of instruction in the department, and student cheating. He agreed with McPherson-Hathaway that the concerns should be presented to the administration;

20. Subsequently, Mr. McPherson-Hathaway asked Plaintiff for a copy of his resume, which Plaintiff provided, and then asked Plaintiff to review the "Recommendations" which Plaintiff did;

21. Mr. McPherson-Hathaway had prepared a "Petition" to accompany the "Recommendations" and obtained signatures supporting his concerns. Altogether, forty-three (43) individuals signed the petition. On or about November 20, 2013, the letter and Petition was delivered to Defendant Harrison, and also Defendant Hailu. Before doing that, Mr. McPherson-Hathaway gave a copy of the documents to Plaintiff;

1

22. Following receipt of the letter, Mr. McPherson-Hathaway met with Harrison, at which time he reiterated the contents of the letter;

23. Harrison communicated with Hailu and Schneider, and the three concluded that Plaintiff had orchestrated the letter. Hailu began, and continued thereafter, to unfairly and falsely disparage Plaintiff to these Defendants;

24. After Defendants received the petition, Hailu told Plaintif "Do you think this is a positive for you? This is not a positive; this is a negative. This is not how we hire people." Hailu later informed Plaintiff that he had responded that "no one supports or corroborates" the concerns expressed as to cheating in the physics classes, and that "the accusation has no basis.";

25. Before Hailur's comments to Plaintiff, he had conferred with the other two named Defendants and those Defendants concluded that McPherson-Hathaway and the other students were acting as Plaintiff's agents in bringing the concerns. They concluded that, indeed, Plaintiff was the author of the document, even if he did not actually pen the words. Hailu's comments were intended to inform Plaintiff that he would never be given full time status because of the document;

26. On June 6, 2014, CSCC posted an opening for a full-time tenure track position in the Department, with an "Engineering-Physics Emphasis";

27. The posting, which was approved by Hailu and Schneider, sought a successful candidate who possessed "[a]n appropriate combination of education, training, course work and experience" and minimum and preferred qualifications which Plaintiff far surpassed;….

When he learned of the opening, Plaintiff submitted his application, which referenced the students' petition.¶28. Following receipt of the letter, Hailu, with the agreement of the other two Defendants, concluded that Plaintiff would be denied the opportunity to be considered for the position because of the previous understanding that Plaintiff was the source of the petition, and because he had referenced it again in his letter. ¶29.

The selection procedure was manipulated by Hailu with the approval of the other Defendants to exclude consideration of Plaintiff, who was the superior candidate for the position. ¶32. At the commencement of Winter Semester, 2015, Baretto was out of the country and unable to teach the courses he was assigned. Hailu assigned another less

2

qualified adjunct lecturer to teach the full time schedule of courses Barreto was unable to teach. That adjunct received full-time compensation and course load for that Semester. ¶33.

## II. STANDARD OF REVIEW

This Court set out the appropriate standard of review in considering a Civ. R. 12(b)(6) motion in *Williams v. Franklin County Municipal Court,* Civil Action No. 2:10-cv-001155, Opinion and Order, Doc #16, August 8, 2011:

> The complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff's ground for relief must entail more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."
> Although a plaintiff need not plead specific facts, the complaint must give the defendant *fair notice of what the claim is and the ground upon which it rests.*" "To survive a motion to dismiss … 'a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" (emphasis added, citations omitted).

As stated by *Klusty v. Taco Bell Corp.*, 909 F. Supp. 516, 529 (S.D. Ohio 1995), "[t]he purpose of a motion to dismiss … is to test the formal sufficiency of the statement of the claim for relief, it is not a procedure for resolving a contest about the facts or merits of the case." *Ashcraft v. Iqbal*[1] did *not* impose a heightened standard of pleading. In *Erickson v. Pardus, 550 U.S. 89, 93 (2007)*, decided shortly after *Iqbal*, the Supreme Court restated that Fed. R. Civ. Pro. 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief." *Specific facts are not necessary;* the statement need only "give the defendant fair notice of what the … claim is and the grounds on which it rests." (emphasis added), *quoted in Sensations, Inc.v. City of Grand*

---

[1] ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009)

3

*Rapids*, 526 F.3d 291, 295 (6th Cir. 2009); *Antioch Litigation Trust v. McDermitt Will & Emery LLP*, 738 F. Supp.2d 758, 764 (S.D. Ohio 2009).

Thus, as this Court has stated, all that is necessary under *Twombly* is that the complaint raises the right to relief *above the speculative level." Kline v. Ohio State Dental Board*, 699 F. Supp. 2d 966, 970 (S.D. Ohio 2010) (Marbley, J.) (emphasis added).The Sixth Circuit has put it another way: a Rule 12(b)(6) motion may only be granted upon proof by the movant that "plaintiffs *undoubtedly* can prove no set of facts consistent with the allegations that would entitle them to relief." *League of United Latin American Citizens v. Bresden*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis added). Defendants' Motion fails to overcome the hurdles set out in these cases is not one of those rare instances in which dismissal is merited.

### III. ARGUMENT OF LAW

#### A. FIRST AMENDMENT RETALIATION

##### 1. Dr. Crawford has standing to sue for retaliation resulting from the delivery of the petition because of his association with the students

The discussion under this heading addresses the claim that Defendants retaliated against Plaintiff because of the delivery of the petition in November, 2013. Under this analysis, even if the Court should find that Dr Crawford's subsequent statements in his application are not actionable, this claim is.

Defendants cite the well-known elements of a First Amendment retaliation claim in support of the argument that Plaintiff cannot prevail because he did not personally prepare, circulate and deliver the petition. *See, Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

4

Setting aside for a moment the question of the circulator, Mr. Mcpherson-hathaway-Hathaway's acting as an agent for Plaintiff in that activity, Plaintiff's claim meets the Article III test for standing.

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements: first, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not `conjectural' or `hypothetical,'". Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).

The Second Amended Complaint, Doc. 11, asserts such an Article III injury. Mr. Crawford had a legally-protected interest – the right to have his application considered fair and square. When it wasn't, he clearly lost much. He was the superior candidate for the position and would have received it absent the manipulation by Defendants. The second factor, causation, is narrower than that of the First Amendment retaliation claim itself, requiring evidence that it was the Defendants who actually deprived Mr. Crawford of the full time position. This, Doc. 11 clearly does. Finally, a favorable decision will absolutely redress the Article III wrong.

The question before the Court, assuming that Mr. Mcpherson-Hathaway was not acting as Plaintiff's agent, is whether the First Amendment confers the right to sue upon the victim of the wrongdoer's retaliation because of the expression of another. The elements set out in *Bloch, supra,* and its progeny do not answer this question *because that specific set of facts was never at issue in those cases* [or, for that matter, the cases preceding *Bloch*

upon which it rested]. The two cases cited by Defendants which purport to answer that *specific question* establish no precedent, nor even any analysis of the issue presented here.

This Court, in deciding the question presented in the affirmative must look to *Thompson v. North American Stainless, LP,* 562 U.S. 170 (2011) and it's progeny. In that case, Thompson's finance, who also worked for North American Stainless, filed a charge of discrimination under Title VII of the Civil Rights Act of 1964. The company then fired Thompson, and he sued, asserting he was a victim of retaliation under the statute. The specific anti-retaliatory provision at issue states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because *he* has made a charge under Title VII. 42 U.S.C. §2000e–3(a)" (emphasis added). *Id.,* at 173.

The Court of Appeals for the Sixth Circuit concluded that Thompson, having not himself made the charge of discrimination, had no standing to bring suit. The Supreme Court reversed, summarizing that

> [W]e conclude that Thompson falls within the *zone of interests* protected by Title VII. Thompson was an employee of NAS, and the purpose of Title VII is to protect employees from their employers' unlawful actions. Moreover, accepting the facts as alleged, Thompson is not an accidental victim of the retaliation- collateral damage, so to speak, of the employer's unlawful act. To the contrary, injuring him was the employer's intended means of harming Regalado [Thompson's fiancé]. Hurting him was the unlawful act by which the employer punished her. In those circumstances, we think Thompson well within the zone of interests sought to be protected by Title VII. He is a person aggrieved with standing to sue.
> *Id.,* at 178 (emphasis added).

Of significance to the application of *Thompson* to First Amendment retaliation claims is the Court's reliance in that case on *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61-62 (2006) which broadened the spectrum of conduct that can

6

qualify as an adverse employment action for retaliation cases in employment, finding that an adverse employment action is any action that " well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." This, of course, brought employment retaliation proof in line with the First Amendment retaliation standard. Hence, the same test is applied under both employment discrimination and constitutional retaliation contexts.

The question of application of the *Thompson* analysis to a First Amendment retaliation claim is not one of first impression in this Circuit, nor among other courts. After *North American Stainless* was handed down, the Third Circuit Court of Appeals decided *Montone v. City of Jersey City*, 709 F.3d 181 (3rd. Cir. 2013). Multiple plaintiffs filed suit. Montone was a police officer who asserted the employer retaliated against her because of her political activities in support of a candidate for mayor. She claimed the retaliation was the denial of promotion. One of the consolidated cases decided in *Montone* was denominated the "*Astriab* plaintiffs" by the Court. These were a group of officers who also asserted First Amendment retaliation in the denial of *their promotions* though none had actually engaged in the political activities of Montone. *Id.,* at 188.

On appeal following the grant of summary judgment against all the plaintiffs, the Court addressed the standing of the *Astriab* plaintiffs to bring suit under the First Amendment. Quoting *Thompson,* the Court stated that "[t]he Supreme Court 'ha[s] described the zone of interests' test as denying a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute [or constitutional guarantee in question] that it cannot reasonably be assumed' suit was

7

intended to be permitted." *Id., at* 199, *citing Thompson*, 131 S.Ct. at 870 (citation omitted) (internal quotation marks omitted). This is a very low bar, indeed.

The Court concluded that the association of the *Astriab* plaintiffs with Montone, and the interest in promotions being unaffected by political activities easily met the zone of interests test, conferring Article III standing on those plaintiffs. *Id.,* 200-01.

Further, in *Benison v. Ross*, 983 F. Supp. 2d 891 (E.D. Mich. 2013), the plaintiffs, husband and wife, asserted First Amendment retaliation against officials of the university where the husband was a student and the wife a professor. In December, 2011, the husband, Christopher Benison, was instrumental in obtaining a "no confidence" vote against two of the defendant administrators in the Academic Senate. *Id.,* at 897.

Subsequently, the wife, Dr. Benison, applied for a salary increase, which was denied after a negative recommendation by one of the named defendants, Davidson. *Id.,* at 898. After the denial, the wife resigned and took a position in West Virginia. The school sued her for breach of her agreement to remain at the institution at least one year after completion of a sabbatical she took following the "no confidence" vote. Husband and wife both then filed suit asserting First Amendment retaliation.

Although the wife had not participated in any way in her husband's actions in securing the "no confidence" vote, the Court concluded the husband's actions were protected First Amendment expression and that his wife had standing to sue because of her association with her husband, relying on *Thompson. Id.,* at 899.

The District Court, however, granted summary judgment on the basis that the plaintiffs failed to establish any actions taken by the defendants were casually-related to the

"no confidence" vote. The Sixth Circuit, however, reversed that ruling, holding that sufficient evidence of causation existed to take *both* plaintiffs' claims to a jury. *Benison v. Ross,* 765 F.3d 649 (6th Cir. 2014). Although the panel did not directly address the question of the wife's standing, that it accepted the proposition is inherent in the decision itself.

Is Dr. Crawford, therefore, within the zone of interests that afford protection from First Amendment retaliation? There is no doubt that the petition is itself First Amendment expression. Defendants do not challenge that. Nor is there any question of Dr. Crawford's association with the forty-three (43) students who brought the matters of public concern to the attention of Defendants. Hailu's statements to Dr. Crawford undeniably reveal that he and the other Defendants believed that Dr. Crawford was the instigator of the petition. The fact that the students concluded the petition with a call to the administration to promote Dr. Crawford to a full-time position is undeniable. What was visited upon Dr. Crawford was hardly collateral damage.

In that the First Amendment enshrines free expression as a bedrock principle of the nation, that public universities are implicitly charged with instilling that principal in students, and that the teacher-student association is the key vehicle for such learning, can any Court find that the public university teacher's [and students'] interest is so marginally related to the purposes implicit in the constitutional guarantee in question that it cannot reasonably be assumed suit was intended to be permitted? Certainly, this cannot be.

This Court should follow precedent and hold that Dr. Crawford has standing to bring this claim against these Defendants because of his association with the students who prepared and signed the document.

### 2. Dr. Crawford has standing to sue because the students were acting as his agents in submitting the petition to the Defendants

The record facts are that the Defendants believed that the petitioners were acting at the behest of Dr. Crawford. Though Dr. Crawford did not solicit Mr. Hathaway-Mcpherson-hathaway to begin preparing a document, once he knew that was being proposed, and that the concerns expressed by the students dovetailed with his own personal concerns, he did take an active role in its completion and ultimate delivery.

Defendants have no addressed the agency question in their Motion. Implicit in the argument, to be sure, is the assertion that Dr. Crawford had to pen the words *himself* in order to have standing. Rejection of this implied argument is even less of a reach than the finding of standing through Dr. Crawford's association only with the students. The *Bloch* test can hardly be read to deny the principal the right to sue for retaliation against him by the state for expression by his agents in which he took an active part.

### 3. Defendants read *Garcetti* too broadly, it does not apply on these facts

Before addressing the question of "public concern," this Court can easily dispose of the argument that *Garcetti v. Ceballos,* 547 U.S. 410 (2006) precludes Dr.Crawford's First Amendment claim. After that decision, numerous courts, such as the panel in *Weibarth v. Geauga Park Dist.*, 499 F.3d 533, 544 (6th Cir. 2007), extended *Garcetti's* holding to include virtually *any* statement by an employee – that such reports as mismanagement and cheating in a public institution was covered as part of "ad hoc or defacto duties."

Apparently, defense counsel's research on this issue ended with *Weibarth*, but they should have looked further. Because the Supreme Court repudiated the unwarranted

10

reading of *Garcetti* in *Lane v. Franks*, ___ U.S.___, 134 S.Ct. 2369 (2014), by expressly rejecting an expansive reading of the *Garcetti* exception. Noting that "Garcetti said nothing about speech that simply relates to public employment or concerns information learned in the course of public employment, " the Court clarified, "[t]he critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Id. at 2379. Reiterating that "public employees do not renounce their citizenship when they accept employment," the Court again proclaimed the importance of public-employee speech that relates to the public employment itself: "There is considerable value, moreover, in encouraging, rather than inhibiting, speech by public employees. For government employees are often in the best position to know what ails the agencies for which they work. The interest at stake is as much the public's interest in receiving informed opinion as it is the employee's own right to disseminate it." Id. at 2377 (citation, internal quotation marks, and alteration omitted).

Defendants do not append Dr. Crawford's job description to their Motion, but one can doubt that it includes – in addition to teaching – the ferreting out of waste and mismanagement in the institution. This argument lacks merit.

### 4. The two instances of expression each satisfy the "public concern" test for Rule 12(b)(6) purposes

As an initial matter, the delivery of the petition, that of the students, could well not fall within the "public concern" test at all. If, as the cases teach, the retaliation against Dr. Crawford had as at least one of its goals punishing the students for their expression of

concern and support for Dr. Crawford, his association with the students does not implicate the "public concern" test at all.

Defendants do not pretend to assert that the issues raised in the petition are *not* "speech on any matter of political, social, or other concern to the community" which clearly satisfy the test. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 543 (6th Cir. 2012). They clearly are.

Defendants claim only that Dr. Crawford's reference to the petition in his June 23, 2014 application cannot satisfy the test. The argument, however, bears an inherent contradiction that only the *first* expression of a matter of public concern so qualifies – any subsequent references to it do not. This is no explicitly admitted, but is the logical consequence of the argument.

In any event, if this Court concludes, as we submit it should, that Dr. Crawford has standing to sue for the expression in the petition itself in November, 2013, Defendant's argument on the public concern question does not – and cannot – serve to bar that claim.

Turning to the argument Defendants *do* make, that Dr. Crawford's subsequent expression does not meet the test, the cases point away from their position.

First, expression need not be public to qualify. *Taylor v. Keith*, 338 F.3d 639, 643 (6th Cir. 2003). Nor does merely making an expression within the course of employment "strip public employees of their First Amendment rights…." *Id,* at 644 (anticipating *Lane v. Franks, supra)*. A public employee [to the contrary] has a constitutional right to comment on matters of public concern without fear of reprisal from the government as employer. *Id.,*

12

at 643, *citing Connick . Myers*, 461 U.S. 138, 140 (1983) and *Pickering v. Bd. Of Educ.*,

391 U.S. 563, 574 (1968); *Perry v. McGuinnis*, 209 F.3d 597, 604 (6th Cir. 2000).

> This circuit has a established a three-step process for evaluating a public
> employee's claim of unlawful retaliation. First, the employee must establish that his
> speech is protected. To accomplish this, the employee must show that his speech
> touches on a matter of public concern, and demonstrate that his interest in the
> speech outweighs the government's countervailing interest in promoting the
> efficiency of the public service it provides as an employer. This determination is a
> question of law for the court to decide. Second, the employee must show that the
> employer's adverse action would chill an ordinary person in the exercise of his First
> Amendment rights. Finally, the employee must present sufficient evidence to create
> a genuine issue as to whether his speech was a substantial or motivating factor in the
> employer's decision to discipline or dismiss.

*Id.* (citations omitted); *Farhat v. Jopke*, 370 F.3d 580, 589 (6th Cir. 2004).

The entirety of the speech need not meet the test in order for that part which

constitutes a matter of public concern to be actionable. *Chappel v. Montgomery County*

*Fire Protection Dist. No. 1*, 131 F.3d 564, 574-75 (6th Cir. 1997).

To accomplish the task of determining if speech constitutes a matter of public

concern, the reviewing Court must engage in a fact-specific inquiry. "Whether an

employee's speech addresses a matter of public concern must be determined by the content,

form, and context of a given statement, as revealed by the record as a whole." *Taylor,*

*supra,* 388 F.3d at 644. Indeed, "[t]he motive which underlies an employee's statements is a

relevant, but not necessarily dispositive factor when considering whether an employee's

statements may be fairly characterized as relating to any matter of political, social, or other

concern to the community." *Id.,* at 645, *citing Chappel, supra,* 131 F. 3d at 575.

*Taylor* provides an instructive instance of the consideration of the record evidence.

Taylor, a police sergeant, filed an internal "use of force" report which implicated another

13

officer in the beating of an arrestee who was already subdued and handcuffed. The report

did not accuse the other officer of use of excessive force. When the department did not

investigate, Taylor brought the matter up again. Internal affairs investigated and both

Taylor and his son, another officer, gave evidence. Both were then terminated.

When the Taylors sued for First Amendment retaliation, the defendants successfully

argued to the trial Court that, among other things, the report was an internal filing that did

not rise to a matter of public concern because it did not specifically accuse the other officer

of excessive use of force. *Id.,* at 643. The defendants contended that the Taylors were fired

for violating department polices in the same arrest of which they expressed concern. *Id.,* at

646. The Court of Appeals reversed this judgment, and in doing so, on the matter of public

concern, reviewed the actions/comments of the superiors to the statements by Taylor, and

concluded that "[t]here is little doubt that, in this context, the Taylors' supervisors

perceived their comments as communicating a concern about a fellow officer's potential for

excessive force."*Id.,* at 646. *Taylor* thus teaches that in determining whether employee

speech touches on a matter of public concern, the superiors' *reaction* to that speech is a

necessary consideration.

*Chappel* provides additional guidance. In that case, the defendants argument

mirrored that made by Defendants herein:

> The defendants' most sweeping argument is that none of Chappel's speech may be
> considered speech on a matter of public concern because all of his speech was
> fundamentally and predominantly motivated by his self-interest in obtaining a
> position as a paramedic with the ambulance district. To this end, the defendants
> argue that Chappel complained about poor collections and financial
> mismanagement solely because he was interested in securing financing for the
> paramedic program. They also suggest that Chappel "lashed out against Chief

14

Welch and the rest of his family," alleging misappropriations, nepotism, and a conflict of interest, only because "he believed that they were standing in his way." *Chappel, supra,* 131 F.3d at 574.

The Court, however, rejected this argument. "[T]he argument that an individual's personal motives for speaking may dispositively determine whether that individual's speech addresses a matter of public concern is plainly illogical and contrary to the broader purposes of the First Amendment. Matters of public concern are those that may be "fairly characterize[d] ... as relating to any matter of political, social, or other concern to the community. Speech on such matters is protected because the First Amendment is concerned not only with a speaker's interest in speaking, but also with the public's interest in receiving information. *Id.,* at 575 (citations omitted).

Defendants' citation to other cases as dispositive is misplaced. None of them apply. As to the reported decisions, *Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.,* 690 F. Supp. 2d 115 (W.D.N.Y. 2010), putting aside that the Court applied a different standard to the expression than applies in this Circuit, the plaintiff's asserted protected expression obviously was unrelated to matters of public concern. "Plaintiff's alleged complaints relate solely to matters of personal interest and are unrelated to matters of public interest i.e. the District's *failure to respond to his employment application in a fashion as expeditiously as plaintiff would have liked.*" *Id.,* at 134. A complaint by an applicant that the prospective employer was not acting quickly enough on his application clearly is not a matter of political, social, or other concern to the community. In *Ezekwo v. New York City Health & Hospitals Corp.,* 940 F.2d 775 (2nd Cirl. 1991), after the plaintiff was passed over for the position of chief resident at the facility she commenced writing serial memoranda asserting

15

that the administration was biased against her because of her race and gender, "smeared" her and retaliated against her. The Court summed up the nature of the complaints as: "(1) the failure of attending physicians and lecturers to be present at scheduled times, (2) the manner in which she was treated by Dr. Farris and the attending physicians, (3) the manner in which Dr. Farris evaluated her performance, (4) her lack of opportunity to perform surgery, (5) the lack of personal attention she received from the attending physicians, (6) the lack of proper hospital maintenance, (7) Dr. Farris' poor management and motivational skills, and (8) the poor teaching methods of the attending physicians." *Id.*, at 777-778.

As with the other cases cited, *Ezekwo*'s facts bear no resemblance to those of the instant case, and this renders it of no benfit.

Defendants' chief contention appears to be that Dr. Crawford "did not include the petition in his application materials." Motion, Doc. 14 at 10, ftnt. 2. Given that there is no question the petition constitutes protected expression, Defendants appear to concede that *had* Dr. Crawford included the documents in his application, his reference to the petition in his letter would have qualified as protected expression. Yet, Defendants did not *need* the document to understand what Dr. Crawford was referring to – they were clear on it, as Hailu had so informed Dr. Crawford when Defendants first received it.

Applying *Taylor's* and *Chappel's* guidance, Defendants' reaction to Dr. Crawford's reference to the petition -- manipulating the application process to deny him the position – is consistent with a belief that the matter was one of public concern. After all, Hailu had already let Dr. Crawford know that the petition would scuttle any chance for a promotion for him.

Although the question of "public concern" is one for the Court, where there are disputed issue of material fact, a jury must decide those facts. Here, precisely what Dr. Crawford's motive for making explicit reference to the petition is not decided. Dr. Crawford' motive may well have been to reinforce in the Defendants' minds the reason *behind* the students' "unusual display" – that, indeed, the department was in great need of reform.

The Court is not in a position to decide these complicated factual issues on a motion to dismiss, certainly not in a position to conclude that *undoubtedly* Dr. Crawford cannot produce facts after discovery which would satisfy his burden.

**5. There are sufficient facts in the record to support causation**

As to the third element - that the adverse action was motivated, at least in part, by Plaintiffs' constitutionally protected activity – we point out that, generally, causation is an issue that must be decided by the jury. *Matulin v. Village of Lodi*, 862 F.2d 606, 613 (6th Cir. 1988) ("The matter of causation is an issue of fact which must be decided by the jury."); *Hadad v. Croucher*, 970 F.Supp. 1227, 1241 (N.D. Ohio 1997). Causation implicates the very slippery question of the *Defendants'* motives, and, as such, the Court must consider both circumstantial as well as direct evidence. *Thaddeus X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999).

In this case, as to the petition itself, Defendants were on notice of the concerns in late November, 2013, and the action taken against Plaintiff -- denial of the promotion – occurred in late August, 2014, a period of about nine (9) months. Defendants have

17

provided case law that such an interval, *without any other evidence of retaliatory motivation,* is insufficient in itself to establish the necessary temporal proximity.

In this case, however, there are three pieces of evidence which make those cases inapplicable. First are Hailu's statements to Dr. Crawford after Defendants received the petition that it ("Do you think this is a positive for you?  This is not a positive; this is a negative. This is not how we hire people."). Second, it was not until June, 2014 that any position which could possibility have any relation to the substance of the petition was posted. And, finally, once Defendants knew Dr. Crawford ignored Hailu's threat, and applied, they manipulated the process to deny him the position.

Second, if this Court concludes that Dr. Crawford's reference to the petition in his letter of June 23, 2014 was on a matter of public concern, the very cases Defendants cite require denial of the motion even in the absence of any other evidence except temporal proximity.

The causation question is simple: were the Defendants' actions motivated *at least in part* by the protected expression? *Id.,* at 394 (emphasis added). Answer to that question cannot be decided in this case from the four corners of the Second Amended Complaint.

## B.   DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY ON THE FIRST AMENDMENT RETALIATION CLAIM

The question here is whether Dr. Crawford's right to protection of the First Amendment was clearly established as of August 20,  2014.  To decide that question, this Court must look to binding precedent from "the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Risbridger v Connelly*, 275

18

F.3d 565, 569 (6th Cir. 2002) (citations omitted). "Clearly established" means that "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Gaspers v. Ohio Dept. of Youth Svcs.*, 648 F.3d 400, 416 (6th Cir. 2011).

As the Sixth Circuit recently explained in affirming this Court's denial of qualified immunity,

> The "clearly established law" should not be defined at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. However, [t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent Public officials could still be on notice that their conduct violates established law even in novel factual circumstances.
>
> *Wenk v. O'Reilly*, 785 F.3d 585, 598 (6th Cir. 2015) (citations omitted),

A failure to promote a public employee because that employee engaged in protected activity has long been known to constitute actionable retaliation in this Circuit. *Thaddeus X, supra,* 175 F.3d at 396. The *Benison* decision, *supra,* and its affirmance by the Sixth Circuit [as well as the *Montone* decision] removed any possible question that a state university administrator would not have known that retaliating against a lecturer by denying promotion because that professor either was associated with a petition reflecting matters of public concern, or himself made such expression violated the First Amendment.

By August, 2014, the contours of Dr. Crawford's right to protection were clearly established and Defendants' Motion must be denied on the issue.

## C.     THE INDIVIDUAL DEFENDANTS MUST ANSWER FOR AGE DISCRIMINATION UNDER SECTION 1983

Defendants argue that, first, there is no cause of action for age discrimination under the Equal Protection Clause of the Fourteenth Amendment via Section 1983 and, second, that the right to such claim was not clearly established in August, 2014. Neither argument has merit.

### 1. The Right To Remedy Age Discrimination under the Equal Protection Clause

To begin, Defendants' citation to "Sixth Circuit precedent" is to a couple unpublished decisions that do not actually apply. For example, in *Golio v. Adena Heath Sys.,* 2012 WL 1409535 (S.D. Ohio April 23, 2012), Magistrate Judge Abel's reference to Section 1983 age discrimination was *dictum* in that he held that the defendants were not state actors in the first instance. Defendants' "argument" is less than enlightening as to *why* these state actors are not liable to respond under the Equal Protection Clause of the Fifth Amendment. They claim, without real analysis, that the ADEA constitutes the exclusive means of redressing age discrimination in state employment.

In fact, there is no controlling authority either under Sixth Circuit or United States Supreme Court precedents.

But there is compelling analysis preceding from the Seventh Circuit that, well before August, 2014, held that defendants such as these are indeed liable for Equal Protection violations. *Levin v. Madigan,* 692 F.3d 607 (7th Cir. 2012) *cert. granted*, 133 S.Ct. 1600 (U.S. 2013) *and cert. dismissed as improvidently granted*, 134 S.Ct. 2, (U.S. 2013). Levin, a sixty-year old assistant attorney general under Madigan in Illinois when fired, sued Madigan for violation of the Equal Protection Clause to redress the

discriminatory termination. The Court framed the analysis as follows: "In evaluating the limits of relief available under § 1983 for statutory claims, the Supreme Court has held that '[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983.' *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

After undertaking a comprehensive examination of the text and statutory history in light of *Sea Clammers* and its progeny [*Id.,* at 613-622], the Court concluded that "In light of our analysis of the ADEA and the relevant case law, and given these divergent rights and protections, we conclude that the ADEA is not the exclusive remedy for age discrimination in employment claims." *Id.,* at 622. The Court found that one compelling reason for the existence of the Section 1983 right of action that "Without the availability of a § 1983 claim, a state employee (like Levin) who suffers age discrimination in the course of his employment is left without a federal damages remedy." *Id.* The Court's decision is hardly surprising. The ADEA is by no means a complete scheme for remedying the impact of age discrimination – denying a litigant both damages for intangible losses and punitive damages is hardly comprehensive.

That is precisely the injustice that Defendants ask this Court to impose upon Dr. Crawford here. *They* can't be answerable for their discriminatory actions – and because Columbus State Community College is *immune, no one* must answer.

*Levin's* compelling analysis of the question has been recognized and followed in other Circuits since being handed down. *See, e.g., Reed v. Garden City Free School Dist.,*

21

987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013) (Second Circuit courts overwhelmingly hold

no preemption by ADEA); *Edwards v. Borough of Dickson Cty.,* 994 F. Supp. 2d 616

623 (N.D. Pa. January 14, 2014) (in light of *Levin's* "compelling analysis" Court would

hold no preemption despite contrary older precedent in district courts of the Third

Circuit).

### 2. The Right was clearly established by August, 2014

The defendant in *Levin* made the same argument as Defendants here. That

argument was rejected:

> We agree with Judge Chang [United States District Judge Edmond E. Chang,
> *Levin v. Madigan,* 2011 WL 270841 (N.D. Ill, July 12, 2011) "*Levin II*"]. At the
> time of the alleged wrongdoing, it was clearly established that age discrimination
> in employment violates the Equal Protection Clause. See Kimel, 528 U.S. at 83,
> 120 S.Ct. 631 [*Kimel v. Florida Board of Regents,* 528 U.S. 62 (2000)]. Although
> age is not a suspect classification, states may not discriminate on that basis if such
> discrimination is not "rationally related to a legitimate state interest." Id. Whether
> or not the ADEA is the exclusive remedy for plaintiffs suffering age
> discrimination in employment is irrelevant, and as Judge Chang noted, it is "odd to
> apply qualified immunity in the context where the procedural uncertainty arises
> from the fact that Congress created a statutory remedy for age discrimination that
> is substantively broader than the equal protection clause." Levin II, 2011 WL
> 2708341, at *12. Because Levin's constitutional right was clearly established, the
> Individual Defendants are not entitled to qualified immunity.
> *Levin, supra,* 692 F.3d at 622.

*Levin's* citation to *Kimel* is particularly on point, because the specific statement at

page 83 of that opinion holds that "States may discriminate on the basis of age without

offending the Fourteenth Amendment if the age classification in question is rationally

related to a legitimate state interest." If a state actor, in 2000, could, without violating

Equal Protection, *rationally* discriminate without fear of retribution, a state actor could

obviously not *irrationally* discriminate on the basis of age without violating the Equal

Protection Clause.

Irrational discrimination is precisely what Dr. Crawford asserts occurred in this

case. The *rational choice* would have been to give the full time position to the superior,

most qualified candidate, not manipulate the process to deny that candidate the position.

Defendants do not, it appears, concede that Dr. Crawford's age was the determining

factor in their decision to deny him the job and certainly do not make any argument that

such discrimination, if it occurred, was rational. Hence, this claim presents a matter for

further development and discovery.

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing was filed through the Court's
electronic filing system on October 1, 2015. Notice of this filing will be sent to all parties and
counsel through the Court's filing system. Parties and counsel may access the filing through the
Court's system.

Respectfully submitted,
/s/ Michael Garth Moore

23